**Theodore KOOLSTRA, Plaintiff,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant.**

**No. 89–K–480.**

United States District Court, D. Colorado.

Dec. 8, 1989.

Jacquelyn Higinbotham, Colo. Rural Legal Services, Inc., Fort Morgan, Colo., for plaintiff.

Stephen D. Taylor, Asst. U.S. Atty., Denver, Colo., for defendant.

### ORDER DENYING MOTION

KANE, Senior District Judge.

Counsel for the defendant in this case has filed a motion to amend the answer pursuant to Rule 15(a), Fed.R.Civ.P. and the plaintiff has filed a response consenting to the motion. Ordinarily this course of events would conclude with the entry of a routine minute order granting the confessed motion. Such will not happen in the event, however, because the recitation of grounds for the motion reflects grave and vexing problems with the representation of federal government agencies before this court. Indeed, I am concerned that the motion itself might constitute a violation of Rule 11, Fed.R.Civ.P. and therefore deem it appropriate to issue this memorandum opinion in the hope that the situation will

be permanently corrected without the need of considering the imposition of sanctions.

The motion reflects that the Assistant United States Attorney assigned to this case by the United States Attorney prepared the answer "pursuant to instructions received" from the defendant's agency and that he "erroneously and inadvertently admitted the allegations" in certain numbered paragraphs "in direct violation of the instructions" he "had received" from the general counsel's office of the defendant's agency. No additional grounds are stated to support the motion.

An Assistant United States Attorney is not a mere scrivener of dictation. Like every other attorney who is authorized by law to appear in causes before this court his signature to any pleading constitutes a certificate that he has read the pleading, that to the best of his knowledge, information and belief after reasonable inquiry it is well grounded and that it is not interposed for any improper purpose, "such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Rule 11, Fed.R.Civ.P.

The Office of the U.S. Attorney was established by Congress with the passage of the Judiciary Act of 1789. The Act provided for the appointment

> in each district of a meet person learned in the law to act as attorney for the United States ... whose duty it shall be to prosecute in each district all delinquents for crimes and offenses, recognizable under the authority of the United States, and all civil actions in which the United States shall be concerned....

1 Stat. 73, 92; *see also* Executive Office for U.S. Attorneys, U.S. Dept. of Justice, *United States Attorneys' Manual* § 1–3.110 (1988) [hereinafter *U.S. Attorneys' Manual*]. By statute, United States Attorneys are appointed by the President, *see* 18 U.S.C. § 541, and Assistant United States Attorneys are appointed by the Attorney General, *id.* § 542.

The duties of U.S. Attorneys are set forth in 18 U.S.C. § 547. That section provides that U.S. Attorneys are to prosecute all offenses against the United States, prosecute and defend actions for the federal government in which the United States is concerned, defend revenue and customs agents in actions against them for their official acts, institute and prosecute actions for violations of revenue laws, and make reports to the Attorney General. *Id.* Although U.S. Attorneys initially were not supervised by the Attorney General, *see* U.S. Attorneys' Manual at 1–3.110, federal law now explicitly provides that the Attorney General "shall direct all United States attorneys [and] assistant United States attorneys ... in the discharge of their respective duties." 28 U.S.C. § 519.

The division of labor between attorneys in the Department of Justice and U.S. Attorneys is not altogether clear. The *U.S. Attorneys' Manual* simply states that "the division of responsibility in the Department of Justice between the offices of the U.S. Attorneys and the legal divisions [of the Department of Justice] is determined by statutes, Code of Federal Regulations provision, Attorney General and Deputy Attorney General directives, and actual practice." § 1–3.400. One thing is certain, however: attorneys with the particular agencies of the federal government, unless expressly authorized by statute, do not have the authority to litigate cases in which the agency is involved. That function is retained exclusively by officers of the Department of Justice, of which U.S. Attorneys are a part.[1] Federal law states:

> Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.

---

1. I have located no express authority which states that a U.S. Attorney is an officer of the Department of Justice. However, the Department of Justice Organization Chart indicates that United States Attorneys are under the auspices of the Associate Attorney General, who reports the to Attorney General and is a part of the Department of Justice. *See U.S. Attorneys' Manual* § 1–2.002. In addition, the fact that, by statute, Assistant U.S. Attorneys are appointed and supervised by the Attorney General supports this conclusion.

28 U.S.C. § 516; *see also* 5 U.S.C. § 3106 (providing that agency and military department heads may not employ counsel to conduct litigation but must refer the matter to the Department of Justice). The Attorney General is likewise charged with the overall supervision of this litigation. *Id.* § 519.

Although federal agencies may not conduct litigation themselves unless specifically authorized, there is a great deal of cooperation between the agencies and attorneys in the Department of Justice. Such cooperation is necessary because oftentimes agency personnel are most familiar with the facts, regulations and laws at issue and are better able to locate and assemble agency papers and records. *See U.S. Attorneys' Manual* at 4–1.430. Agency attorneys may provide factual material, draft interrogatories, pleadings, briefs and other papers. *See* 3 Op.Off.Legal Counsel 104, 108 (1979); *U.S. Attorneys' Manual* § 4–1.440. Yet, the Department of Justice has consistently emphasized that control over the litigation resides with the DOJ attorney. 3 Op.Off.Legal Counsel 104, 107, 109 (1979) (basic responsibility for conducting litigation and bearing its expense belongs to DOJ, even though attorneys with other agencies play an extensive role). In fact, with respect to pleadings and papers prepared by agency personnel, the *U.S. Attorneys' Manual* makes clear that the U.S. Attorney may not abdicate his or her responsibility for checking their content:

Agency counsel may offer to prepare suggested pleadings and papers for civil cases. It is appropriate to receive such suggestions, or even to request agency preparation of suggested pleadings and papers, if this will facilitate the disposition of litigation rather than delay it. However, agency counsel are not required to provide this service. *Pleadings and papers prepared by agency counsel should be critically examined, and rewritten as necessary, to assert the proper litigating position for the government and conform with proper practice and local rules.*

Agency representatives generally should prepare the answers to interrogatories and sign such answers. *See* Fed.

R.Civ.P. 33. *Agency answers to interrogatories, if any, should not be submitted to the court pro forma, but should be critically examined, and recast if necessary, to reflect accurately the facts and the appropriate litigating position which should be taken under the circumstances.*

*U.S. Attorneys' Manual* § 4–1.440 (emphasis added).

There are important policy reasons for the reference of all litigation to the Department of Justice and for final authority over litigation to reside in the department and not with the agency:

It allows the presentation of uniform positions on important legal issues, ensures that government lawyers will be able to select test cases which present the government's position in the best possible light, and gives the Attorney General authority over lower court proceedings so that government litigation will be better handled on appeal and before the Supreme Court. It provides for greater objectivity in the filing and handling of cases by attorneys who are not themselves affected litigants. And it facilitates presidential supervision over executive branch policies implicated in litigation.

4B Op.Off. Legal Counsel 820, 821 (1980); *see also U.S. Attorneys' Manual* at 4–1.430 ("[b]ecause of their greater emotional detachment and greater experience in the day-to-day litigation of civil cases, Justice Department attorneys are generally in a better position to evaluate the legal and factual merit of a particular case, in terms of the likelihood of success in litigation, than are agency counsel").

In this case, the assistant U.S. Attorney's "clerical mistake" in admitting allegations which the agency's prepared answer had denied indicates that the assistant U.S. Attorney has failed to take a detailed interest in this litigation. Such an error would have been difficult to make had the assistant U.S. Attorney followed departmental instructions that he "critically examine" all suggested papers and pleadings submitted by the client agency. It is also

indicative of a more fundamental problem of U.S. Attorney abdication of responsibility over agency litigation, in contravention of the statutory mandate that U.S. Attorneys maintain control over the conduct of all actions in which the federal government is a party.

For the reasons stated, the motion to amend is denied without prejudice to the defendant to file a new motion to amend if such can be supported by acceptable grounds. Because there is a pending motion for judgment on the pleadings or in the alternative for summary judgment, possible amendments necessarily must be made with heightened scrutiny.

The hearing set for December 15, 1989 is vacated.